IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DONNA CZUBERNAT,          )
                          )
                          )
            Plaintiff,    )   Case No.  07 C 2821
      v.                  )
                          )   Judge Virginia M. Kendall
UNIVERSITY OF PHOENIX,    )
                          )
            Defendant.    )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Donna Czubernat ("Czubernat") filed suit against the Defendant, the University of Phoenix (the "University") pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1) alleging that the University failed to hire her for the position of Enrollment Counselor on the basis of her age. The University moved for summary judgment on Czubernat's claim. For the reasons set forth below, the University's Motion for Summary Judgment is granted.

**STATEMENT OF FACTS**

Czubernat is a 57-year-old woman. Pltf. 56.1 Resp. ¶ 1.[1] The University is a private institution of higher learning, which caters to the educational needs of working adults by offering its students graduate and undergraduate degrees as well as certificates and non-credit programs. Pltf. Resp. 56.1 ¶ 2, 5. From May 31, 2006 to June 25, 2006, the University sought to fill six entry-level Enrollment Counselor positions at its Warrenville, Illinois location. Def. Resp. 56.1 ¶ 1. An

---

[1] Citations to "Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Facts in Support of its Motion for Summary Judgment" have been abbreviated to "Pltf. 56.1 Resp." Citations to Defendant's Response to Plaintiff's Local Rule 56.1 Statement of Facts in Opposition to Defendant's Motion for Summary Judgment have been abbreviated to "Def. 56.1 Resp."

1

Enrollment Counselor is responsible, in part, for contacting prospective students and advising those students regarding the University's degree programs as well as facilitating students' enrollment in the University. Pltf. Resp. 56.1 ¶ 7. Applicants were to possess a general knowledge of the higher education market and industry. Pltf. Resp. 56.1 ¶ 7; Def. Resp. 56.1 ¶ 6. The University strongly preferred a Bachelor's Degree, prior experience in an educational institution, and prior customer services, sales, and/or marketing experience. Def. Resp. 56.1 ¶ 6-8.

Once an applicant submitted a resume to the University for the position, the University confirmed that the applicant was minimally qualified. Pltf. Resp. 56.1 ¶ 13. After that initial determination was made, the candidate was required to participate in a group assessment. Pltf. Resp. 56.1 ¶ 13. After the group assessment, the University conducted a personal interview with the applicant. Pltf. Resp. 56.1 ¶ 13. The University would extend an offer only after successful completion of each step of this interview process: the group assessment, the personal interview, and a background check. Pltf. Resp. 56.1 ¶ 13.

The Enrollment Counselor positions were posted and available to be filled by prospective applicants at different times. Def. Resp. 56.1 ¶ 2. Each position was designated by a specific Request for Hire ("RFH") number. *Id*. In order to be considered for a particular position the applicant was required to apply for a specific RFH.[2] Pltf. Resp. 56.1 ¶ 8. Applicants were not considered for any other RFH, even for the same position, unless they applied to each individual RFH.[3] Pltf. Resp. 56.1 ¶ 8. Similarly, once an RFH was filled, the unsuccessful applicants for the

---

[2] Czubernat argues that the RFH is "an internal document of the Defendant of which no applicant is aware." Pltf. Resp. 56.1 ¶ 8. In other words, Czubernat does not deny that the University had such a policy, but rather, asserts that she was not aware of it when she applied for the position.

[3] See footnote 2.

particular RFH were not automatically considered for any other contemporaneous or subsequent RFH for the same position unless they reapplied for that position.[4] Pltf. Resp. 56.1 ¶ 8.

The two Enrollment Counselor positions that were open at the time that Czubernat applied were designated by RFH numbers 067903 and 067904. Def. Resp. 56.1 ¶ 1-2. The remaining four positions, RFH numbers 068238, 068239, 068666, and 068667, were not posted until after Czubernat submitted her application and after she was scheduled for her group assessment. Def. Resp. 56.1 ¶ 1-2.

Czubernat alleges that she did not apply for a specific RFH number; but rather, she posted her resume on Careerbuilder and Monster.com and then received an email to come to the University for a group assessment. Pltf. Resp. 56.1 ¶ 9. Two representatives of the University attest that Czubernat applied for RFH # 067903 and that the University does not proactively search resumes or contact potential employees posted on Careerbuilder or any other recruiting website nor does it have the ability to do so. Pltf. Resp. 56.1 ¶ 9. Both parties agree that no one told Czubernat that she was applying for a specific RFH number nor that, once rejected, her resume would not be considered for future Enrollment Counselor positions that may open after the date she submitted her resume. Def. Resp. 56.1 ¶ 4. Czubernat does not dispute that she did not specifically apply for the Enrollment Counselor positions posted and approved after she applied. *Id*.

Mr. Herbert James ("James"), Enrollment Manager of the Warrenville Learning Center, reviewed all of the resumes that the University received for the Enrollment Counselor positions,

---

[4] Czubernat denies the assertion arguing that the University's hiring manual takes a contrary position. Yet, the policy actually states that candidates not selected for the position should be told that the position has been filled and their resume will be kept on file for future reference "in the event that a candidate calls inquiring as to why they were not selected for the position." Pltf. Ex. 19. Otherwise, external candidates "may be notified via a decline letter sent by the supervisor" and "those applicants responding to "blind" newspapers (sic) ads do not need to be notified." *Id*.

including RFH # 067903. Pltf. Resp. 56.1 ¶ 11. As Enrollment Manager, James would have been Czubernat's direct supervisor had the University hired her for the RFH # 067903 position. Pltf. Resp. 56.1 ¶ 11. Upon review, James forwarded the resumes of those individuals who met the minimum qualifications for the position to Amy Holecsek ("Holecsek"), the Associate Campus Director of the Warrenville Learning Center. Pltf. Resp. 56.1 ¶ 11. Holecsek invited the minimally qualified individuals selected by James, including Czubernat, to attend the June 13, 2006 group assessment. Pltf. Resp. 56.1 ¶ 12. James approved Czubernat's application even though she did not possess a Bachelor's Degree because he was impressed by Czubernat's work experience. Def. Resp. 56.1 ¶ 9, 10.

On June 13, 2006, Czubernat, along with seven to ten other applicants, attended the group assessment. Pltf. Resp. 56.1 ¶ 14. There, James and Holecsek provided the attendees with additional information about the University and the Enrollment Counselor's duties. Pltf. Resp. 56.1 ¶ 14. The applicants were also asked to give a three minute presentation about themselves during which they were asked to describe their background, education history, and why they wanted to be an Enrollment Counselor at the University of Phoenix. Pltf. Resp. 56.1 ¶ 14.

James and Holecsek were impressed by Czubernat's presentation skills. As a result, they asked Czubernat to complete an application for employment and for a background check at the conclusion of the group assessment,. Pltf. Resp. 56.1 ¶ 16. Czubernat was the only candidate who attended the June 13, 2006 group assessment that was asked to fill out an employment application. Def. Resp. 56.1 ¶ 13. According to James and Holecsek, Czubernat appeared to be over the age of forty, but her age had no bearing on their decision to advance her to the next stage of the process. Def. Resp. 56.1 ¶ 15; Pltf. Resp. 56.1 ¶ 16. Czubernat admits to looking over fifty. Pltf. Resp. 56.1

¶ 15.

Following the group assessment, Czubernat completed the background check form used by the University which was supplied by an outside vendor. Pltf. Resp. 56.1 ¶ 17. In order to ensure that the background check is accurately completed on the correct individual, there is a space on the form for the applicant's date of birth as well as other personally identifying information. Pltf. Resp. 56.1 ¶ 17. The space for the applicant's year of birth is filled with "x's" and only the day and month of the date of birth are left blank. Pltf. Resp. 56.1 ¶ 17. Although not required by the form, Czubernat voluntarily chose to put her year of birth on the form "out of habit" disclosing for the first time that she was 57. Pltf. Resp. 56.1 ¶ 18; Def. Resp. 56.1 ¶ 16, 18. Once her employment application and background check form were completed, James and Holecsek told Czubernat that she should hear back from the University shortly to schedule the next stage in the application process, the one-on-one interview. Pltf. Resp. 56.1 ¶ 19; Def. Resp. 56.1 ¶ 17.

Unbeknownst to Czubernat, two applicants, Robert Baker ("Baker") and Deane Stanton ("Stanton") were selected by the University for RFH numbers 067903 and 067904 prior to Czubernat's group assessment. Def. Resp. 56.1 ¶ 3. Baker and Stanton's job offers, however, were contingent upon the successful completion of their background checks, and thus, the University continued to conduct group assessments for the same position in the event that either applicant accepted another position or failed the background check. Pltf. Resp. 56.1 ¶ 20-21; Def. Resp. 56.1 ¶ 3. No one advised Czubernat that she was only being considered for RFH 067903 nor did they tell her that she was only being considered for a position in the event that Baker failed his background check. Def. Resp. 56.1 ¶ 11, 12. On June 20, 2006, Baker passed his background check and the University hired him for RFH 067903, the RFH for which Czubernat was being considered. Pltf.

Resp. 56.1 ¶ 24. Accordingly, the University did not contact Czubernat for the one-on-one interview. Pltf. Reps. 56.1 ¶ 24. Stanton also passed her background check and the University hired her to fill RFH # 067904, the only other Enrollment Counselor position open and approved at the time that Czubernat applied.

Baker was 44 years old at the time he accepted the Enrollment Counselor position. Pltf. Resp. 56.1 ¶ 22. He had a Bachelor's degree with a double major, previous experience at another university as an admissions adviser, and extensive experience in management. Pltf. Resp. 56.1 ¶ 22. Stanton was 45 years old, had a Bachelor's degree, and previous experience as a Sales/District Relations Representative. Pltf. Resp. 56.1 ¶ 26. In contrast, Czubernat's highest level of education was a high school degree with some classes completed at a community college. Pltf. Resp. 56.1 ¶ 23. While Czubernat had worked as a bankruptcy counselor, an independent contractor for selling debt relief, and as an assistant in her husband's law office, she did not have a background in higher education. Pltf. Resp. 56.1 ¶ 23.

The University scheduled group assessments for the four Enrollment Counselor positions opened after Czubernat submitted her resume. Def. Resp. 56.1 ¶ 20. On June 29, 2006, Beverly Peterson ("Peterson") filled RFH number 068238, Justin Sauabria ("Sauabria") filled RFH number 068239, and Abijeet Sharma ("Sharma") filled RFH number 068666. Peterson, an employee referral, was 31 years old, had an Associate's Degree, and no prior work experiences in admissions. Def. Resp. 56.1 ¶ 21-24. Sauabria was 23 years old, had a Bachelor's Degree, had no prior work experience in admissions, and had less sales experience than Czubernat. Def. Resp. 56.1 ¶ 22. Sharma was 26-years-old, was working toward a Bachelor's Degree in business management at the University, had no prior work experience in admissions, and had less sales experience than

6

Czubernat. Def. Resp. 56.1 ¶ 23. On July 15, 2006, Mandy Adams ("Adams") filled job requisition number 068667. Def. Resp. 56.1 ¶ 24. Adams was 29-years-old, had a Bachelor's Degree in social work, had no prior work experience in admissions, and had less sales experience than Czubernat. Def. Resp. 56.1 ¶ 24.

The RFH procedure is described in the supervisory manual, but does not detail the University's policy regarding considering applicants for positions opened and approved after their resumes are received, considered, or rejected. Def. Resp. 56.1 ¶ 25. The University's response to Czubernat's EEOC complaint was that she was not selected for RFH 067903 because she was not the most qualified candidate. Def. Resp. 56.1 ¶ 27.

## **STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v.*

*City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

## **DISCUSSION**

I. <u>The ADEA and the Indirect Method of Proof</u>

The ADEA prohibits an employer from refusing to hire an individual because of her age. 29 U.S.C. § 623(a)(1). "To establish a claim under the ADEA, a plaintiff-employee must show that 'the protected trait (under the ADEA, age) actually motivated the employer's decision"--that is, the employee's protected trait must have 'actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome.'" *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). Czubernat attempts to prove her age discrimination claim solely under the indirect method of *McDonnell-Douglas*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under the indirect method, Czubernat must first present a *prima facie* case of discrimination by establishing that she: (1) was a member of the protected group; (2) sought a position for which she was qualified; (3) was not hired; and (4) a substantially younger person who was similarly situated was hired. *Zaccagnini v. Charles Levy Circ. Co.*, 338 F.3d 672, 675 (7th Cir. 2003). It is undisputed that Czubernat was over 40, was at least minimally qualified for the Enrollment Counselor position, and was not hired.

    A) <u>Czubernat failed to prove the second and fourth prongs under the *McDonnell Douglas* indirect method of proof</u>.

        1. <u>Czubernat failed to prove that she applied for the positions opened after she submitted her resume</u>.

8

The second prong of the *McDonnell Douglas* indirect method of proof is that the plaintiff must prove that she sought a position for which she was qualified. Two positions, RFH number 067903 and 067904, were open at the time Czubernat applied and the University agrees that Czubernat was considered for RFH 067903. Czubernat argues that she was not considered for RFH 067903 and 067904 because the University had already tentatively hired Baker and Stanton, and thus, her credentials should be compared to the four individuals chosen over her that were hired after her group assessment. The University put forth evidence that an applicant must apply for a specific RFH and that applicants will not be considered for any other RFH, even for the same position, unless they apply to each individual RFH. Czubernat offers no evidence to the contrary, but rather asserts that the RFH "document" is an internal document of which "no applicant is aware." In other words, Czubernat failed to present any evidence that the RFH policy does not exist, nor does she dispute that it was in place during the Enrollment Counselor hiring process; but rather, argues that she was not aware that she was applying for specific RFH numbers. The only evidence Czubernat put forth to challenge the University's hiring procedures was that its hiring manual does not mention the policy; yet she fails to dispute that is actually existed. The fact that the policy was not enumerated in the written policy, standing alone, does not create a genuine issue of disputed fact such that a reasonable juror could conclude that Czubernat applied for and was considered by the University for the four positions opened after she submitted her resume and after she attended the group assessment. But even if this Court were to assume that Czubernat put forth sufficient evidence to support the second prong of the *McDonnell Douglas* indirect method of proof, she fails to prove the fourth prong.

    2. <u>Baker and Stanton are not similarly situated (RFH Numbers 067903 and 067904)</u>

9

To make out a *prima facie* case, Czubernat must show that the younger employees who were hired possessed analogous attributes, experience and qualifications. This she cannot do. Employees are similarly situated if they are directly comparable in all material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (citations omitted). Plaintiffs are required to show "at a minimum that the [allegedly similarly situated] employees possessed analogous attributes, experience, education, and qualifications relevant to the positions sought." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610-11 (7th Cir. 2006) (*quoting Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000)); *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 322 (7th Cir. 2003). There were two Enrollment Counselor positions posted at the time Czubernat applied, RFH numbers 067903 and 067904, and the University contends that Czubernat only applied to RFH number 067903. Comparing Baker's credentials to Czubernat's leaves no room for a reasonable juror to conclude that Baker and Czubernat were similarly situated. Baker was 44 years old at the time he accepted the Enrollment Counselor position, had a Bachelor's degree with a double major, previous experience at another university as an admissions adviser, and extensive experience in management. In contrast, Czubernat's highest level of education was a high school degree with some classes completed at a community college. While Czubernat had worked as a bankruptcy counselor, an independent contractor for selling debt relief, and as an assistant in her husband's law office, she did not have a background in higher education. Czubernat does not dispute that the University strongly preferred applicants with a Bachelor's degree and prior experience in an academic institution. Accordingly, Czubernat failed to prove that Baker was similarly situated to her in all material respects.

Even if this Court were to assume that the University considered Czubernat for the other

open RFH position (of which there was no evidence other than the fact that the position was posted prior to Czubernat's application), Stanton's qualifications exceeded Czubernat's. Stanton was 45 years old, had a Bachelor's degree, and previous experience as a Sales/District Relations Representative. Accordingly, Czubernat failed to put forth evidence that substantially younger applicants who were similarly situated were hired.

### 2. Beverly, Sauabria, Sharma, and Adams: RFH Numbers 068238, 068239, 068666, and 068667

Even if this Court were to assume that Czubernat was rejected in favor of Beverly, Sauabria, Sharma, and Adams, Czubernat failed to put forth evidence that they were similarly situated to her in all material respects. Peterson was referred by another employee and had an Associate's Degree; Sauabria and Adams had Bachelor's Degrees; and Sharma was working toward a Bachelor's Degree in business management at the University. Accordingly, Czubernat failed to put forth evidence that she was similarly situated to substantially younger hired applicants.

## II. Czubernat failed to prove pretext

Even if this Court were to assume that Czubernat put forth evidence of a *prima facie* case of age discrimination, the University put forth legitimate reasons for choosing Baker over Czubernat: namely, that Baker was the most qualified candidate. As such, the burden shifts back to Czubernat to put forth evidence that the University's reasons for rejecting her were pretextual. "A pretext . . . is a deliberate false-hood." *Kodl v. Bd. of Educ.*, 490 F.3d 558, 562 (7th Cir. 2007); *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006) (citations and internal quotation marks omitted). "[T]o show pretext, [plaintiff] must show more than [defendant's] decision was mistaken, ill considered or foolish, [and] as long as [the employer] honestly believes those reasons, pretext has not been shown." *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006)

(internal quotations omitted). Here, Czubernat has simply failed to offer any evidence suggesting that the University's reason for not hiring her for the Enrollment Counselor position was dishonest. Czubernat argues that the University's policy to not consider applicants for positions to which they did not apply or for positions posted after their applications were considered and rejected does not pass the "smell test" because the policy was not mentioned in its manuals. This, however, is not sufficient evidence that the University's articulated reason for rejecting Czubernat is a pretext and that the actual reason was Czubernat's age.

Moreover, Czubernat does not dispute that the University strongly preferred applicants with a Bachelor's degree and prior experience in an academic institution. The six applicants chosen over Czubernat either possessed Bachelor's Degrees or Associate's Degrees.

Indeed, Czubernat states that she "can neither admit nor deny" whether Baker or Stanton were the most qualified candidates in that they were selected by the University prior to receiving her application. Pltf. Resp. 56.1 ¶ 25. Czubernat testified that she "[doesn't] know what happened" and that it was her "true belief" based upon speculation. Pltf. Resp. 56.1 ¶ 27. As such, Czubernat's pretext proof is limited to her own subjective, unsubstantiated conjecture which cannot be used to prove an employer's true motives to defeat a summary judgment motion. *See Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337 (7th Cir. 1991) (A party to a law suit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture.); *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659-60 (7th Cir. 1991) (en banc) (Inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1571-72 (7th Cir. 1989) (a witnesses' "gut feeling"

and self-interested assertions are not enough to ward off summary judgment).

Without any evidence to support Czubernat's allegations of age discrimination, it is not for this Court to second-guess the University's business judgment. *Foster v. Andersen, L.L.P.*, 168 F.3d 1029, 1035 (7th Cir. 1999) ("we do not sit as a super-personnel department that reexamines an employer's personnel decisions"); *Blise v. Antaramian*, 409 F. 3d 861, 866 (7th Cir. 2005)(even if the employer's decision could be deemed "mistaken, ill considered or foolish," as long as the employer genuinely believed its reason for not hiring plaintiff, the reason will not be considered pretextual.) Czubernat cannot establish that the University's legitimate, non-discriminatory reason for not hiring her, *i.e.*, that she was not the most qualified candidate, is pretextual, and thus the University is entitled to summary judgment.

III.  Conclusion and Order

For the foregoing reasons, The University of Phoenix's Motion for Summary Judgment is granted.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:   June 4, 2008